UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WEDRIA LONG,

        Plaintiff,

v.

ANNAE SANDERS, ET.AL.,

        Defendants.
                                                  /

No. 09-11021

District Judge Arthur J. Tarnow

Magistrate Judge R. Steven Whalen

## REPORT AND RECOMMENDATION

Before the Court is Defendants Schumacher, Hamilton, Allen, Summers and Beasley's Motion for Dismissal and/or Summary Judgment [Docket 21], filed June 9, 2009, which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that the motion be GRANTED IN PART AND DENIED IN PART, as follows:

(1) That the motion be GRANTED as to Defendant Schumacher, for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a), dismissing the complaint without prejudice as to Schumacher;

(2) That the motion be GRANTED as to the Fourteenth Amendment Equal Protection claims against Defendants Hamilton, Allen, Summers, and Beasley;

(3) That the motion be GRANTED as to claims against Defendants Hamilton, Allen, Summers, and Beasley in their official capacities.

(4) That the motion be DENIED as to Eighth Amendment claims against Defendants Hamilton, Allen, Summers, and Beasley in their individual capacities.

-1-

# I. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff, a Michigan Department of Corrections ("MDOC") inmate currently housed at the Huron Valley Complex in Ypsilanti, Michigan, filed a civil rights claim pursuant to 42 U.S.C. §1983 on March 13, 2009, alleging violations of her Eighth Amendment and Fourteenth Amendment Equal Protection rights.

Proceeding *pro se,* Plaintiff, then housed at the Robert Scott Correctional Facility in Plymouth, Michigan, alleges that during the course of a November 21, 2007 fire drill, another prisoner, Larkita Collier, approached her from behind, grabbing her breasts. *Complaint* pg. 3 of 50. Plaintiff alleges that upon warning Collier to leave her alone, Collier slashed her face with a razor, then punched her several times, stating "[b]itch I told you to give up the pussy or get fucked up." *Id.* Plaintiff states upon being "beaten down to the ground," Collier then "kicked and stomped" her "as staff stood by and watched" *Id.* Plaintiff states that Defendant Muzzin, an MDOC Sergeant, and Defendant Allen, a corrections officer, were present, but did not intervene, alleging that instead, "Muzzin stood by while I was yelling "'[h]elp - get her off me.'" *Id.* at 5 of 50. Plaintiff also notes that Defendant Summers, "an experienced sergeant," exhibited deliberate indifference by leaving the yard area as the attack was occurring. *Id.* at 6 of 50. Plaintiff alleges that Resident Unit Manager ("RUM") Defendant Beasley, supervising the fire drill, refused to restrain Collier until a non-defendant corrections officer arrived on the scene. *Id.* at 5 of 50. Plaintiff states that she was assisted by a non-defendant assistant resident unit supervisor ("ARUS") and then transported to a

nearby hospital for stitches. *Id.*

Plaintiff contends that Defendant Hamilton, a corrections officer, should have been present in the yard at the time of the drill which mixed security IV and V level inmates, rather than inside the facility checking for prisoners. *Id.* at 7 of 50. She also faults Defendant Sanders, an assistant deputy warden ("ADW"), alleging that she "knew or should have known that a mass movement of prisoners of the highest security required additional supervision." *Id.* at 6 of 50. Plaintiff alleges that Defendant Stovall, the institution's warden, Deputy Warden Shumacher, and ADW Sanders did not conduct a "thorough investigation" of the incident and erred by allowing security level "V" prisoner to mingle with level "IV" prisoners at the fire drill. *Id.* at 7 of 50. Plaintiff faults these Defendants for allowing prisoners access to razor blades. *Id.* Plaintiff, suing all Defendants in their individual and official capacities, requests monetary damages as well as injunctive relief consisting of the "removal of disposable razors from the facility or better control of disposable razors." *Id.* at 3 of 50.

## II. STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 (summary judgment)." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether,

as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

In assessing the complaint's sufficiency, the court must first determine whether a complaint contains factual allegations, as opposed to legal conclusions. *Ashcroft v. Iqbal*, ---U.S.---, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, 129 S.Ct. at 1949 (citing *Bell Atlantic Corp. v. Twombley*, 550 U.S 544, 555, 127 S.Ct. 1955, 1964-1965, 167 L.Ed.2d 929 (2007)). Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

> "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief."

129 S.Ct. at 1950 (internal citations omitted).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether

the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III. ANALYSIS

**A. Defendant Schumacher**

Defendants argue first that because Plaintiff failed to exhaust her administrative remedies against Defendant Schumacker, claims against this Defendant should be dismissed. Citing 42 U.S.C. § 1997e(a), Defendants note that neither of the grievances filed by Plaintiff regarding the November 21, 2007 assault mention Schumacker. *Defendants' Brief*, 4-6, *Docket #21*.

"[E]xhaustion is not per se inadequate [under the PLRA] simply because an individual later sued was not named in the grievances." *Okoro v. Hemingway,* 481 F.3d 873, 874 (6th Cir.2007)(*citing Jones v. Bock,* 549 U.S. at 215, 127 S.Ct. at 921, 923-25, 166 L.Ed.2d 798 (2007)). However, if such a requirement is written into the prison's administrative procedures, compliance is mandatory if a defendant is to be considered exhausted. *Jones v. Bock*; *Woodford v. Ngo,* 548 U.S. 81, 92, 126 S.Ct. 2378, 2387,165 L.Ed.2d 368 (2006). Current MDOC policy states that the "[d]ates, times, places and names of all those involved in the issue being grieved are to be included" in the original grievance. MDOC Policy Directive 03.02.130 ¶ T (Effective December 19, 2003).

A review of the grievances attached to the Complaint, a supplemental filing by Plaintiff, and the present motion, indicate that Schumaker was not named at the first step of any of the seven grievances Plaintiff filed since the November, 2007 incident. *Docket #1, 21, 29.* Further, the merits of claims against Schumaker appear to be undermined by the fact that her role was limited to reviewing already-filed grievances. Nonetheless, because claims against her are not properly exhausted and should be dismissed without prejudice, the Court

declines to consider the substance of the allegations against this Defendant. *Bock, supra,* 549 U.S. at 219-220, 127 S.Ct. 910-911, 166 L.Ed.2d 798. "A prisoner's failure to comply with the PLRA's exhaustion requirement deprives a district court of the ability to address the merits of his claims." *Johnson v. County of Wayne,* 2008 WL 4279359, *3 (E.D.Mich.2008) (Steeh, J.)( *citing Jones v. Bock, supra,* 549 U.S. at 219-220, 127 S.Ct. at 918-19, 166 L.Ed.2d 798 (2007)); *see also Horn v. Bay County Sheriff's Dept.,* 2008 WL 3285808, *8 (E.D.Mich.,2008)("Where there is a failure to exhaust, the court will not reach the merits of the complaint; rather, the complaint will be dismissed without prejudice").

**B. Eighth Amendment Claims Against Beasley, Summers, Allen and Hamilton**

**1. General Principles**

The Eighth Amendment proscribes the infliction of cruel and unusual punishment upon prisoners. In order for a prisoner to establish an Eighth Amendment violation under § 1983, she must allege and prove an unnecessary and wanton infliction of pain, or the infliction of pain totally without penological justification. *See Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 346 (1981). Eighth Amendment claims must satisfy a two-prong standard. First, the alleged wrongdoing must be "objectively harmful enough" to establish a constitutional claim (objective component). Second, the prison official must act with the requisite state of mind (subjective component). *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), citing *Wilson v. Seiter*, 501 U.S. 294, 298, 303, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

The objective component is contextual and responsive to "contemporary standards of decency." *Hudson*, 503 U.S. at 8 (citing *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). The Supreme Court has clearly held that "when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated." *Id.* at 9. Therefore, a prisoner need not show a significant injury. *Id.*; *Moore v. Holbrook*, 2 F.3d 697, 701 (6th Cir. 1993) (citing *Hudson* to conclude that the extent of injuries does not provide a basis for dismissal).

In regard to the subjective component, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994). In finding that negligence was insufficient to establish a constitutional claim, the *Farmer* Court held that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

### 2. The Present Case

Defendants contend that Plaintiff has failed to state a claim of indifferent indifference, arguing first that "an isolated or occasional attack by one inmate on another is an insufficient basis on which to assert an Eighth Amendment failure to protect claim." *Defendants' Brief* at 7 (*citing Stewart v. Love,* 696 F.2d 43 (6th Cir. 1982)). Second, denying the allegation that the area was understaffed at the time of the fire drill, Defendants also argue that none of these

Defendants controlled staffing decisions. *Id.* at 10. Third, Defendants contend that in the absence of backup staff, they were not constitutionally required to intervene on Plaintiff's behalf against an armed prisoner. *Id.* at 11 (*citing Winfield v. Bass,* 106 F.3d 525, 532-33 (8th Cir. 1997)).

I agree with Defendants' second contention. Even assuming that the yard was understaffed at the time of Collier's attack, Plaintiff does not dispute that present Defendants (a RUM, a sergeant, and two corrections officers) did not control staff assignments and thus, would not be liable for failing to allot a sufficient number of officers to the area. However, Defendants cannot show as a matter of law that the attack was unforeseen or that their actions during the course of the attack passed constitutional muster.

To be sure, the fact that the facility "housed many violent prisoners and that prison violence did occur is not sufficient to constitute deliberate indifference." *Defendants' Brief* at 10 (*citing Gibson v. Foltz,* 963 F.2d 851, 854 (6th Cir. 1992)). However, evidence suggests that present Defendants possessed more than generalized knowledge that violence *could* occur. Plaintiff has submitted affidavits by herself and other prisoners stating that Defendants were forewarned that Collier intended to attack either Plaintiff or other inmates in an effort to be placed in a segregation unit with her companion. Prisoner Dalephenia Jones states that she warned ARUM Beasley one day before the assault that "Collier [] was planning on jumping someone." *Affidavit of Dalephenia Jones, Docket #28,* pg. 33 of 36, ¶2. Plaintiff has submitted her own affidavit stating that at the onset of the fire drill, she

informed Defendants Summers, Allen, and Hamilton that she feared being attacked. *Id.* pg. 36 of 36. These affidavits support the conclusion that Defendants were placed on notice that 1) Collier was planning an attack and 2) Plaintiff reasonably feared that she would be attacked by Collier. Where a defendant possesses prior knowledge of an impending danger to a prisoner from another inmate, "the mere failure to protect an inmate on a [s]ingle occasion can constitute a deprivation of constitutional rights giving rise to a claim under s 1983." *Redmond v. Baxley,* 475 F.Supp. 1111, 1117 (D.C.Mich. 1979)(*citing Estelle,* 429 U.S. 97, 97 S.Ct. 285).

Further, although Defendants also argue that they were not required to take "heroic" measures against an armed prisoner in the absence of backup staff, I disagree that claims that they impermissibly delayed in intervening are dismissible as a matter of law.[1] Defendants assert that "there is no authority for the proposition that an unarmed prison official exhibits deliberate indifference to an inmate's reasonable need for safety or act unreasonably when she fails to intervene immediately in an attack by one prisoner armed with a dangerous weapon on another." *Defendants Brief* at 11. However, they make no showing that while the attack was occurring, they were aware that Collier was armed. Notably, they do not dispute that the razor blade in question was small enough to have been carried into the yard without

---

[1] Defendants' argument for dismissal makes no distinction between Hamilton, Allen, Summers, or Beasley's roles in the incident. The Complaint alleges that Allen and Beasley observed the assault and that Summers and Hamilton, apparently nearby, were aware of the ongoing assault. *Complaint* at pgs. 6-7.

staff detection. Plaintiff's treatment records also support the conclusion that the fact a weapon was used was not immediately obvious to either Plaintiff or current Defendants. *Docket #21,* Exhibit M. Further, although Defendants contend that they had no duty to intervene physically on Plaintiff's behalf before backup arrived, they have submitted no evidence to show that they attempted to end the assault on Plaintiff in any other manner, *i.e.,* issuing a verbal command or convincing Collier otherwise to end the assault.[2]

### C. Equal Protection Claims

Plaintiff's claims pursuant to the Equal Protection Clause of the Fourteenth Amendment are subject to dismissal. In order to survive summary judgment, a claimant must present evidence that he was "denied equal protection of the law based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Bass v. Robinson,* 167 F.3d 1041, 1050 (6th Cir. 1999). Further, "a person bringing an action under the Equal Protection Clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual." *Bass,* at 1050. Prison inmates do not constitute a suspect class for equal protection purposes.

---

[2] Plaintiff's *Response* to a more recent summary judgment motion by other defendants is accompanied by the affidavits of two alleged witnesses to the attack, indicating that Defendants not only refrained from physically intervening before backup arrived sometime later, but failed to verbally address Collier, *i.e.,* ordering her to stop assaulting Plaintiff or convincing her by some other means to end the assault. *Docket #44,* pgs. 32, 34 of 50. While the more recent affidavits are not necessary to defeat the present motion, they further support the conclusion that Defendants delayed reaction to the beating was constitutionally substandard.

*Hampton v. Hobbs,* 106 F.3d 1281, 1286 (6th Cir.1997). Accordingly, because Plaintiff has not alleged that Defendants' failure to protect her was motivated by suspect class membership, the equal protection claims should be dismissed.

**D. Immunity**

**1. Eleventh Amendment Immunity**

Defendants contend first that they are entitled to dismissal of claims against them in their official capacities on the basis of Eleventh Amendment immunity. *Defendants' Brief* at 13. Claims against defendants in their *official* capacities, *i.e*, in their capacity as agents of the state under 42 U.S.C. §1983, are generally subject to dismissal on the basis of the immunity granted by the Eleventh Amendment. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). As such, claims for monetary damages against Defendants in their official capacities are barred.

However, "[Eleventh Amendment] immunity does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law." *Ernst v. Rising,* 427 F.3d 351, 358 -359 (6th Cir. 2005); *Ex parte Young,* 209 U.S. 123, 155-56, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908). As such, Plaintiff's requests for injunctive relief are not *per se* barred by Eleventh Amendment Immunity.

Plaintiff's requests "removal of disposable razors from the facility or better control of disposable razors (shaving tools) in the facility." *Complaint* at pg. 3 of 50. I recommend denial of the injunctive request. First, despite Plaintiff's horrific experience, she has made

no specific showing that such an institution wide policy change is required to stave off further attacks. The law is clear that injunctive relief should not issue where the claimed future damage is speculative or may never occur. *Sharp v. Cureton*, 319 F.3d 259, 272 (6th Cir. 2003). In addition, Plaintiff's request is mooted by her subsequent transfer to a different facility. *Kensu v. Haigh,* 87 F.3d 172, 175 (6th Cir.1996).

Second, whether to ban or otherwise limited access to all razors is a decision best left to the MDOC. "Because the realities of running a penal institution are complex and difficult, we have also recognized the wide-ranging deference to be accorded the decisions of prison administrators." *See also Fuller v. Burnett*, 2008 WL 793744, *8 (W.D.Mich. 2008), citing *Kendrick v. Bland,* 740 F.2d 432 at 438, n. 3, (6th Cir.1984)("[W]here a prison inmate seeks an order enjoining state prison officials, this Court is required to proceed with the utmost care and must recognize the unique nature of the prison setting"). Because courts are "ill-equipped" to unilaterally micro-manage prison administration, the injunctive requests should be denied. *Bruce v. Ylst,* 351 F.3d 1283, 1290 (9th Cir.2003).

### 2. Qualified Immunity

Defendants Beasley, Summers, Allen, and Hamilton have submitted no evidence to show that they are entitled to qualified immunity as a matter of law. Because the right to be protected from harm by other inmates is clearly established, Defendant is not protected by qualified immunity. *Farmer, supra,* 511 U.S. at 834, 114 S.Ct. at 1977. There are generally two inquiries in a qualified immunity analysis: (1) did the defendant violate a constitutional

right, and (2) was the right clearly established to the extent that a reasonable person in the defendant's position would know that the conduct complained of was unlawful. *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). More recently the Supreme Court reconsidered the sequential inquiry set forth in *Saucier,* concluding that "while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory." *Pearson v. Callahan,* --- U.S. ----, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Taking the evidence in the light most favorable to Plaintiff, present Defendants fail both prongs of the qualified immunity test.

## IV. CONCLUSION

For these reasons, I recommend that Defendants' Motion for Dismissal and/or Summary Judgment [Docket #21] be GRANTED IN PART AND DENIED IN PART, as follows:

(1) That the motion be GRANTED as to Defendant Schumacher, for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a), dismissing the complaint without prejudice as to Schumacher;

(2) That the motion be GRANTED as to the Fourteenth Amendment Equal Protection claims against Defendants Hamilton, Allen, Summers, and Beasley;

(3) That the motion be GRANTED as to claims against Defendants Hamilton, Allen, Summers, and Beasley in their official capacities.

(4) That the motion be DENIED as to Eighth Amendment claims against Defendants Hamilton, Allen, Summers, and Beasley in their individual capacities.

Any objections to this Report and Recommendation must be filed within fourteen

(14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
UNITED STATES MAGISTRATE JUDGE

Dated: February 22, 2010

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 22, 2010.

s/Susan Jefferson

-15-

Case Manager